Filed 4/14/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| CROSSROADS INVESTORS, L.P., | C072585 |
| Plaintiff and Respondent, | (Super. Ct. No. CV CV 12-1067) |
| v. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yolo County, Daniel P. Maguire, Judge. Affirmed.

Buchalter Nemer, Jeffrey S. Wruble, Efrat M. Cogan, and Oren Bitan for Defendant and Appellant.

Law Offices of Melinda Jane Steuer and Melinda Jane Steuer for Plaintiff and Respondent.

1

This appeal challenges the trial court's denial of defendant's special motion to strike the complaint under Code of Civil Procedure section 425.16, otherwise known as the anti-SLAPP statute.[1] Defendant Federal National Mortgage Association (Fannie Mae) initiated nonjudicial foreclosure proceedings against property owned by plaintiff Crossroads Investors, L.P. (Crossroads), but Crossroads filed for bankruptcy protection, staying the proceedings. Fannie Mae sold the property after it was granted relief from the bankruptcy stay. Crossroads then sued Fannie Mae for wrongful foreclosure, breach of contract, fraud, and other tort and contract actions. Fannie Mae filed an anti-SLAPP motion, contending the actions on which Crossroads based its complaint were Fannie Mae's statements in its papers filed in the bankruptcy proceeding. The trial court disagreed and denied the motion.

We affirm the trial court's order. The principal thrust of Crossroads' action was to recover for violations of state nonjudicial foreclosure law, not for any exercise of speech or petition rights by Fannie Mae. Even if protected activity was not merely incidental to the unprotected activity, Crossroads established a prima facie case showing it was likely to succeed on its causes of action.

FACTS

In 2005, Crossroads borrowed $9 million subject to a promissory note. The note was secured by a deed of trust recorded against an apartment building Crossroads owned in Woodland. Defendant Fannie Mae was the beneficiary of the deed.

The note imposed on Crossroads a prepayment premium (sometimes referred to as yield maintenance) should Crossroads pay the unpaid principal before the note's maturity date or should Crossroads default and Fannie Mae accelerate the loan.

---

[1]     Except as otherwise stated, further undesignated section references are to the Code of Civil Procedure.

2

Crossroads defaulted on the note in late 2010 by failing to make the required payments. Fannie Mae served Crossroads with a notice of default, and it accelerated the loan. In February 2011, Fannie Mae initiated nonjudicial foreclosure proceedings by recording a notice of default against the property. The notice stated Crossroads owed in arrears nearly $287,000 as of December 30, 2010.

As required by Civil Code section 2924c (Section 2924c), the notice of default informed Crossroads it could reinstate the loan by tendering the amount it owed to bring its payments current no later than five business days before the date Fannie Mae intended to sell the property. It informed Crossroads that after the expiration of that time period, the only way to stop the foreclosure was to pay off the loan. It also informed Crossroads it could learn how much it owed either by submitting a written request for a written itemization or by contacting Fannie Mae's trustee. It provided the trustee's address and phone number.

In April 2011, Crossroads entered into a contract to sell the property to Ezralow Company, LLC (Ezralow) for $10.95 million. A few weeks later, Crossroads and Ezralow proposed to Fannie Mae that Ezralow would assume Crossroads' obligations and pay off the loan on Fannie Mae's agreeing to waive the prepayment premium. Fannie Mae refused to waive the prepayment premium and rejected the proposal.

On June 24, 2011, Fannie Mae recorded a notice of trustee's sale against the property. The notice stated a sale date for the property had been set for July 19, 2011. It also stated the total unpaid amount of Crossroad's obligations was estimated at more than $10.5 million.

On July 18, 2011, the day before the property was scheduled to be sold, Crossroads filed for Chapter 11 bankruptcy protection to protect its interest in the property. In its petition, Crossroads asserted it owed Fannie Mae $8.7 million.

On the following day, July 19, Crossroads entered into an amended contract to sell the property to Ezralow. This contract again conditioned Ezralow's obligation to

3

purchase the property on Fannie Mae's agreeing to waive the prepayment premium. It also sought to limit the interest rate Fannie Mae could charge Ezralow. These terms were to be included in Crossroad's bankruptcy reorganization plan and were subject to the bankruptcy court's approval.

While the bankruptcy action was pending from July 2011 to May 2012, Crossroads verbally informed Fannie Mae many times it was ready, willing, and able to cure the default or pay the loan in full. It also verbally asked Fannie Mae many times for a complete accounting of the amount required to cure the default or pay off the loan. Fannie Mae refused to accept Crossroads' tenders. It also provided no response to Crossroads' requests for an accounting.[2]

Although it opposed the prepayment premium, Crossroads informed Fannie Mae that if the bankruptcy court determined Fannie Mae was entitled to the prepayment premium, Crossroads would pay Fannie Mae's claim in full upon the close of escrow of the sale to Ezralow.

The issue of whether Fannie Mae was entitled to recover the prepayment premium as part of its bankruptcy claim was litigated in the bankruptcy proceeding. Fannie Mae filed a claim with the bankruptcy court in the amount of $10.45 million, which included payment of the prepayment premium. In its disclosure statements, Crossroads proposed to reorganize its debt based on the July 2011 amended contract to sell the property to Ezralow but without paying the prepayment premium to Fannie Mae.[3] Fannie Mae

---

[2]    This allegation of fact comes from the verified complaint. Although a plaintiff opposing an anti-SLAPP motion may not rely solely on the allegations of his complaint (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672-673), verified allegations based on the personal knowledge of the pleader may be considered in deciding an anti-SLAPP motion. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289-1290.)

[3]    In bankruptcy proceedings, a disclosure statement provides detailed information regarding a proposed reorganization plan. The plan proponent prepares the statement. The bankruptcy court must approve the statement before it may be sent to all creditors

4

objected to the disclosure statements in part because they did not call for Crossroads to pay the prepayment premium. The bankruptcy court denied approving Crossroad's first three disclosure statements.

Crossroads objected to Fannie Mae's inclusion of the prepayment premium in its claim. However, the bankruptcy court ruled Fannie Mae was entitled to claim the prepayment premium in the bankruptcy proceeding.[4] In addition, the court granted Fannie Mae relief from the bankruptcy stay effective May 15, 2012, if Crossroads had not obtained confirmation of its reorganization plan by that date.

In February 2012, and after the trial court rejected Crossroad's objection to the prepayment premium and granted relief from the stay, Crossroads served an interrogatory in the bankruptcy action on Fannie Mae that asked for the amount required "under state law" to cure the loan as of June 1, 2012. Fannie Mae responded in March 2012 by stating it could not provide an accurate response because the interrogatory sought an amount that was contingent upon future events; it would provide a response on June 1, 2012.

In April 2012, Crossroads filed its fourth disclosure statement. On the same day it also filed a motion to continue the stay. The bankruptcy court conditionally approved Crossroads' latest disclosure statement subject to Crossroads' taking action to correct certain deficiencies in the statement. However, the trial court denied the motion to continue the stay.

Fannie Mae's relief from the bankruptcy stay became effective on May 15, 2012, as Crossroads had not obtained an approved reorganization plan by that date.

---

and parties in interest along with the reorganization plan. (11 U.S.C. § 1125(b).) " 'The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan.' [Citation.]" (*In re Diversified Investors Fund XVII* (Bankr. C.D.Cal. 1988) 91 B.R. 559, 561.)

[4] Fannie Mae later filed an amended proof of claim for approximately $10.36 million, which included the prepayment premium.

On May 17, 2012, Crossroad's attorney, Kenrick Young, spoke with Fannie Mae's attorney, Anthony Napolitano, and asked for a payoff amount to pay the loan in full. He also asked Napolitano if he would agree to notify Crossroads of any scheduled sale date a reasonable time prior to its occurrence. The parties dispute whether Napolitano agreed to this request. Because we must assume the pleadings are correct, for purposes of this motion, we assume Napolitano agreed to provide notice of a sale.

Later that day, Napolitano by email asked to inspect the property. Young responded by email that Crossroads wished to sell the property to Ezralow and pay Fannie Mae in full. He asked if Fannie Mae would agree to a consensual sale of the property to Ezralow on condition Fannie May received the amount it claimed in its amended bankruptcy claim. Young said Crossroads was looking at a July or early August 2012 close of escrow. Napolitano did not respond to this email.

Young contacted Napolitano by telephone on May 22. He asked Napolitano to provide him with the amount required to cure the default. He also proposed that Crossroads would dismiss its bankruptcy action to allow for a faster sale to Ezralow and payment in full to Fannie Mae. He stated Crossroads was ready, willing, and able to cure the default or pay Fannie Mae in full upon receiving the amount of its demand. Napolitano told Young he would check with Fannie Mae and get back to him.

On May 24, the trustee sold the apartment complex at a nonjudicial foreclosure sale. The sale took Crossroads by surprise. Young believed Napolitano would have honored his promise to notify him of any scheduled sale prior to the sale date.

Crossroads objected to the trustee's sale and asked the trustee to set aside the sale and not record a new deed. It also dismissed its bankruptcy action, filed this action against Fannie Mae and the trustee, and recorded a lis pendens. However, the trustee recorded a trustee's deed upon sale.

## PROCEDURAL HISTORY

Crossroads' first amended complaint alleges seven causes of action against Fannie Mae: wrongful foreclosure, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, fraud, promissory estoppel, and intentional interference with a contractual relationship.[5] Crossroads alleges the conduct by Fannie Mae from which its causes of action arise consists of: (1) Fannie Mae's repeated failure to provide, in response to Crossroads' requests and its interrogatory, a timely and accurate accounting of the amount needed to reinstate the loan or pay the loan in full, in violation of Section 2924c; (2) its refusal to accept Crossroads' tenders of the amount required to cure the default or pay the loan in full, in violation of Section 2924c; and (3) its falsely stating it would provide Crossroads with advance notice of a trustee's sale, and its actual failure to provide that notice.

Fannie Mae filed an anti-SLAPP motion and a demurrer against the complaint. In its anti-SLAPP motion, Fannie Mae contended Crossroads' action was actually an attempt to punish Fannie Mae for exercising its rights in the bankruptcy action. It argued Crossroads was challenging Fannie Mae's filing of its bankruptcy claim and its objections to Crossroads' disclosure statements, which objections purportedly contained the information Crossroads sought and Fannie Mae's rejections of Crossroads' tenders. Fannie Mae also claimed Crossroads was challenging its response to Crossroads' interrogatory. These acts by Fannie Mae were arguably protected conduct of speech and petition under the terms of the anti-SLAPP statute, and thus subjected the complaint to the statute. Fannie Mae also contended Crossroads was unlikely to succeed on the merits.

---

[5] The complaint also named as defendants the trustee, Fidelity National Title, Inc., and the purchasers of the apartment complex, JCM Properties, LLC, and Daylight Assets II, LLC. These additional parties and the allegations against them are not before us.

The trial court denied Fannie Mae's motion. It ruled Fannie Mae had not shown Crossroads' action arose from Fannie Mae's protected activity. The court wrote: "The gravamen of plaintiff's first amended complaint is its contention that defendant wrongfully foreclosed upon the subject property in an illegally conducted non-judicial foreclosure." The court also overruled the demurrer.

DISCUSSION

Fannie Mae contends the trial court erred when it denied its anti-SLAPP motion. It argues it submitted sufficient evidence to establish that Crossroads' was suing based on Fannie Mae's protected activities, and that Crossroads failed to show it was likely to succeed on the merits. We disagree. Fannie Mae failed to establish Crossroads' action arose from its protected conduct. To the extent Fannie Mae established any action that was based on protected conduct was not merely incidental to the actions based on unprotected conduct, Crossroads established a prima facie case of succeeding on the merits.

I

*Standard of Review*

The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) Consequently, "the anti-SLAPP statute is to be construed broadly." (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 508.)

We review the trial court's ruling de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We do not weigh the evidence or determine its credibility. Instead, in this case, we accept the plaintiff's evidence as true and evaluate the defendant's evidence only to determine if it has defeated the plaintiff's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

8

We evaluate an anti-SLAPP motion using a two-step process. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) We first determine "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) A defendant meets this burden by showing the plaintiff's action arises from acts taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)

The anti SLAPP statute defines an " 'act in furtherance of a person's right of petition or free speech' " to include: "(1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . , or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1), (2), (4).) The "any other conduct" language codifies that the anti-SLAPP statute "applies to both 'communicative conduct' and 'noncommunicative conduct.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business of Sen. Bill No. 1296 (1997-1998 Reg. Sess.) as amended June 23, 1997, p. 4, quoting *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 18-20.)

In deciding whether a cause of action arises from protected activity, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, original italics.) An "act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid.*, original italics.) Courts must look to "the act underlying the cause of action, not the gist of the cause of action." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190.)

9

When we take this first step and determine whether the plaintiff's causes of action arise from defendant's protected activity, we do not consider the legitimacy of the plaintiff's claims. (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.) If the defendant fails to establish the plaintiff's action is based on defendant's protected activity, then the complaint is not subject to the anti-SLAPP statute. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.)

If the defendant makes the requisite showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. "[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute–i.e., that arises from protected speech or petitioning *and* lacks even minimal merit–is a SLAPP, subject to being stricken under the statute." (*Navellier, supra,* 29 Cal.4th at pp. 88-89, original italics.)

## II

### *Analysis*

Fannie Mae contends Crossroads' suit is based on its exercise of its protected right of petition in the bankruptcy proceeding. It argues that each of the three types of action Crossroads is challenging–failure to provide an accounting, failure to accept tender, and failure to give prior notice of the trustee sale–occurred as part of the bankruptcy proceeding and was protected activity. It also contends Crossroads has not established a prima facie case of succeeding on its causes of action.

Crossroads disagrees, arguing it is suing Fannie Mae based on statements it made and conduct it took (and did not take) that is not protected under the anti-SLAPP statute. It also claims that even if its action challenges protected activity, it submitted sufficient evidence to establish a prima facie case of success on the merits.

We agree with Crossroads.

We examine the challenged activities.

A.   *Failure to respond to requests for accounting*

Section 2924c requires a recorded notice of default to inform the debtor that he may obtain the amount required to pay off or reinstate the loan by communicating with the lender or beneficiary. The notice provides the debtor with two ways he can obtain this information. He may make a written request to the beneficiary or mortgagee for a written itemization of the entire amount required to pay off the loan, or, to find out either the pay off amount or the amount required to stop the foreclosure, he may simply contact the beneficiary or mortgagee. The notice provides the beneficiary or mortgagee's mailing address and telephone number. (Civ. Code, § 2924c, subd. (b)(1).)[6]

Crossroads verbally requested an accounting from Fannie Mae under Section 2924c many times during and after the bankruptcy proceeding, and requested one in

---

[6]   Relevant portions of former Section 2924c require the notice of default to include the following provisions: "Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. . . . [¶] . . . [¶] To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

"_____
 (Mailing address)

"_____
(Name of beneficiary or mortgagee)

"_____
(Telephone)"
(Former § 2924c, subd. (b)(1); Stats. 2001, ch. 438, § 3.)

11

writing in the form of an interrogatory during the proceeding. It never received a response except to its interrogatory, in which Fannie Mae refused to provide the requested information. It contends Fannie Mae violated Section 2924c by not providing an accounting.

Fannie Mae contends Crossroads is attacking protected actions because (1) its response to the interrogatory occurred as part of the bankruptcy proceeding; and (2) the information Crossroads sought–the amount to reinstate or pay off the loan–was litigated and provided to Crossroads in the bankruptcy proceeding through Crossroads objecting to Fannie Mae's receiving the prepayment premium, Crossroads' disclosure statements, Fannie Mae's objection to those statements, and Fannie Mae's claims.

Fannie Mae also argues that Crossroads cannot successfully establish a violation of Section 2924c because that statute purportedly requires all requests for an accounting to be in writing, and there is no evidence Crossroads' requests were in writing. The only exception is Crossroad's interrogatory, and that arguably cannot serve as a valid request under Section 2924c because it sought payoff information as of a future date, not the date of the response's preparation.

Turning to the first step–deciding whether Crossroads is suing based on constitutionally protected conduct–we conclude Crossroads is suing on both protected and nonprotected conduct.

The attack on Fannie Mae's response to the interrogatory served in the bankruptcy action challenges protected activity. The response was made as part of a judicial proceeding. Specifically, the response was discovery in the bankruptcy proceeding and was directed to persons who had an interest in that proceeding. (See *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055.) Moreover, the information Crossroads sought concerned an issue in the bankruptcy proceeding. The interrogatory sought to know the amount required to reinstate the loan as of a later date. Crossroads' proposed reorganization plan called for reinstating the loan in some fashion.

12

The response was thus protected for purposes of the anti-SLAPP statute as a statement made before, and concerning an issue in, a judicial proceeding. (Code Civ. Proc., § 425.16, subd. (e)(1), (2).)

On the other hand, Crossroads' causes of action based on Fannie Mae's lack of responses to Crossroads' other verbal requests for an accounting do not arise from protected activity because they challenge nonexpressive, and thus nonprotected, conduct. The sections of the anti-SLAPP statute on which Fannie Mae relies, subdivisions (e)(1) and (e)(2), protect "any written or oral statement or writing" made before a judicial proceeding or in connection with an issue under review by a judicial body. Here, Crossroads is suing on Fannie Mae's failure to make any communication to Crossroads. Fannie Mae's silence is not a protected written or oral statement.

Fannie Mae argues it provided the information Crossroads sought in its bankruptcy claim and objections, and those are the writings Crossroads is really challenging. It also claims the information Crossroads sought was an issue that was being considered by the bankruptcy court. However, Crossroads' complaint does not allege it is challenging Fannie Mae's writings submitted in the bankruptcy proceeding. The assertion that Crossroads is challenging those writings comes solely from Fannie Mae's briefing. Moreover, nowhere does Fannie Mae show it filed its bankruptcy claim and objections in response to Crossroads' requests under Section 2924c. Indeed, Fannie Mae introduces no evidence showing it responded to Crossroads' verbal requests. Crossroads is suing on Fannie Mae's silence, and subdivisions (e)(1) and (e)(2) do not protect silence.

Fannie Mae's filings in the bankruptcy court cannot be seen as actionable responses to Crossroads' requests. The information Crossroads sought–the amount to cure the default or pay off the loan–was not the same issue being considered by the bankruptcy court. The bankruptcy court was deciding the amount Fannie Mae was entitled to receive under federal bankruptcy law as of the bankruptcy petition date

13

(11 U.S.C. § 502(b)), not the amount needed to cure the default or pay off the loan under state law on a different date. The bankruptcy court specifically determined Fannie Mae was entitled to receive the prepayment premium in this instance because under bankruptcy law, Crossroads still had an opportunity to reinstate the loan by confirming a reorganization plan. The court took no position on whether Fannie Mae was entitled to the premium under state law because the parties did not brief that issue. Fannie Mae has not shown the court determined the amount to cure the default or pay off the loan as of a date other than the petition date. And Fannie Mae has not shown that it provided any payoff amounts in its bankruptcy court filings other than its claim of amounts owed as of the petition date.

Subdivision (e)(4) of the anti-SLAPP statute also does not protect Fannie Mae's silence. The provision protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Refusing to reply to a request for an accounting under Section 2924c is not a protected refusal to speak in connection with a public issue or an issue of public interest. To be connected to a public issue, the conduct must in general concern a person or entity in the public eye, directly affect a large number of people beyond the direct participants, or concern a topic of widespread public interest. (*USA Waste of California, Inc. v. City of Irwin dale* (2010) 184 Cal.App.4th 53, 65; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133.) Fannie Mae's refusal to respond to Crossroads' requests under Section 2924c does not rise to the level of conduct made in connection with a public issue or one of public interest.

Thus, we have causes of action that arise out of protected and nonprotected activity. In determining whether such an action is subject to the anti-SLAPP statute, courts have used different tests. Some courts look to the "principal thrust" or "gravamen" of plaintiff's action to determine whether it is subject to the anti-SLAPP

14

statute. (See *Cotati, supra,* 29 Cal.4th at p. 79.) The trial court used this test, concluding the principal thrust of Crossroads' action was to recover for Fannie Mae's failure to comply with state nonjudicial foreclosure law and for fraud, not for its protected activity in the bankruptcy action. We agree with the trial court for the reasons stated above. Despite the interrogatory, the thrust of this action does not arise from Fannie Mae's constitutional activity. We conclude under the "principal thrust" test that Crossroads' causes of action based on Fannie Mae's failure to provide Crossroads with the requested accounting is not subject to the anti-SLAPP statute.

Other courts faced with mixed causes of action arising and not arising from the defendant's protected activity hold the complaint subject to the anti-SLAPP procedure unless the protected conduct is " 'merely incidental' " to the unprotected conduct. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672.) Applying this test here, we see the protected conduct, Fannie Mae's response to Crossroads' interrogatory, is not merely incidental to the unprotected conduct. Had Crossroads sued only on Fannie Mae's response to the interrogatory, that cause of action would certainly be subject to the SLAPP statute, as it would challenge Fannie Mae's exercise of petition rights in the bankruptcy action. We cannot say that potential liability based on protected activity is merely incidental to the unprotected conduct in this case. We thus proceed to the second step of the anti-SLAPP analysis.

Crossroads argues it has presented a prima facie case showing it established Fannie Mae violated Section 2924c by not providing it with an accounting of the amount needed to reinstate or pay off the loan. Fannie Mae contends Section 2924c required Crossroads to make its request for an accounting in writing, and all of its requests were made orally except for the interrogatory. As for the interrogatory, Fannie Mae argues it is not evidence of a violation of Section 2924c as it sought something the statute did not

require Fannie Mae to provide–a payoff amount as of a future date. It also was privileged against attack as a discovery response.[7]

Fannie Mae incorrectly claims Section 2924c requires all requests for an accounting to be in writing. It requires requests to be in writing only when the debtor wants a written accounting. Otherwise, the statute encourages the debtor to contact the beneficiary, even by telephone, to obtain the information. This point, however, does not end our analysis. Crossroads must still establish a prima facie case that Fannie Mae violated Section 2924c.

California law provides a statutory right to reinstate a loan (sometimes referred to as curing the default or decelerating the loan) generally up to five business days before the property securing the loan is scheduled to be sold. (Civ. Code, § 2924c, subd. (e).) It also provides an equitable right to pay off the loan (referred to as redemption) any time before the property is actually sold. (Civ. Code, §§ 2903, 2905.) Crossroads sought information to exercise both rights. Rather than delve into whether Crossroads had a right to reinstate the loan when it requested the amount to cure the default after the five-day period may have expired, we review the record to determine if Crossroads can establish a violation of Section 2924c based on Fannie Mae's failure to provide the amount needed to redeem the loan. We conclude Crossroads has established a prima facie case.

"Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated

---

**7** Crossroads contends Young's e-mail after the stay was lifted also constituted a written request for an accounting. However, it did not request reinstatement or payoff information. Rather, Young asked if Fannie Mae would agree to sell the property to Ezralow for a price equal to its bankruptcy claim.

differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands." (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 (*Mann*).)[8]

Crossroads has established a prima facie case showing Fannie Mae violated Section 2924c by not providing it with the requested information to redeem the loan. In compliance with Section 2924c, Fannie Mae's recorded notice of default informed Crossroads that in order to find out how much it must pay, or to arrange for payment to stop the foreclosure, it could contact Fannie Mae's trustee. Crossroads went a step further and contacted Fannie Mae's attorney during the bankruptcy proceeding many times and asked to know the amount required to pay off the loan. It also sought the information by means of an interrogatory. Fannie Mae did not provide the information. Implied in Section 2924c's right to learn the amount needed to pay off the loan is a requirement that the beneficiary or trustee will in fact provide that information to the debtor. There is no evidence Fannie Mae responded to Crossroads' requests.

Thus, there is a likelihood Crossroads will be able to establish a violation of Section 2924c. As a result, its causes of action that arise from Fannie Mae's violation are not subject to the anti-SLAPP statute. That is significant here, because the violation serves as a basis for liability in five of Crossroads' seven causes of action against Fannie Mae. Having found prima facie evidence establishing the requisite likelihood of

---

[8] We recognize the issue of whether a court can treat an anti-SLAPP motion like a motion to strike under section 436 and strike only portions of a cause of action is currently before our Supreme Court. (*Baral v. Schnitt*, review granted May 13, 2015, S225090.) Meanwhile, *Mann* continues to be good law.

Crossroads' succeeding on those five causes of action, our analysis ends as to those causes of action, and the trial court's denial of the anti-SLAPP motion against them must be affirmed. We need not address whether Crossroads' allegations of Fannie Mae's failure to accept tender of the amount required to reinstate or redeem the loan are subject to the anti-SLAPP motion, as those allegations relate to the same causes of action.

B.      *Agreeing to provide notice of the sale*

The parties disagree on whether Napolitano, Fannie Mae's attorney, agreed to provide Crossroads with notice of any foreclosure sale after the bankruptcy stay was lifted. Because we must assume Crossroads' allegations are true for purposes of the anti-SLAPP motion, we assume Napolitano did in fact agree to provide notice. According to attorney Young's testimony, Young spoke with Napolitano after the stay was lifted and asked if he would provide prior notice of any foreclosure sale. Napolitano promised he would. Napolitano did not provide notice.

Fannie Mae asserts Crossroads' challenge based on Napolitano's alleged promise arises from protected activity because it is an attack against settlement discussions made in connection with litigation. (See *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154.) The request to provide notice, however, was not a protected settlement discussion. It did not contemplate or constitute a settlement of the bankruptcy action, because when the promise was made, there was nothing left in that action to settle. Crossroads' reorganization plan had not been approved and Fannie Mae had been released from the bankruptcy stay.

At best, the promise took place while the parties talked about settling the nonjudicial foreclosure action. However, statements made in or about nonjudicial foreclosure proceedings are not protected activity. For purposes of the anti-SLAPP statute, a nonjudicial foreclosure is not a judicial proceeding where the constitutional right of petition is exercised. A nonjudicial foreclosure "does not involve legislative, executive, or judicial proceedings. Nonjudicial foreclosure proceedings are statutorily

18

based. . . . [A]ccording to the proponents of the 1996 amendment to the nonjudicial foreclosure statute, . . . 'a nonjudicial foreclosure is a private, contractual proceeding, rather than an official, governmental proceeding or action.' [Citations.]" (*Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1520.) "Nonjudicial foreclosure merely provides a nonjudicial, private alternative to judicial foreclosure." (*Id*. at p. 1521.)

Napolitano's agreement to provide prior notice of a foreclosure sale related only to the nonjudicial foreclosure process, and was not a statement made in a judicial proceeding or about issues pending in a judicial proceeding. Thus, his statement was not protected activity, and Crossroads' fraud and promissory estoppel causes of action, each based on Napolitano's statement, did not arise from protected activity. The trial court correctly denied the anti-SLAPP motion as to those causes of action.

DISPOSITION

The trial court order denying the anti-SLAPP motion is affirmed. Costs on appeal are awarded to Crossroads. (Cal. Rules of Court, rule 8.278(a).)


                                            NICHOLSON        , Acting P. J.



We concur:



        ROBIE            , J.



        DUARTE          , J.


19